IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:15-CV-14-FL

| | | |
|---|---|---|
| EDWARD W. ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WASTE MANAGEMENT OF | ) | ORDER |
| WILMINGTON; TAMMIE | ) | |
| HOFFMAN; LAURA SNOW; and | ) | |
| DONOVAN DUKES, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendants' motion to dismiss for insufficient process, insufficient service of process, and failure to state a claim upon which relief can be granted, made pursuant to Federal Rules of Civil Procedure 12(b)(4), 12(b)(5), and 12(b)(6). (DE 24). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert B. Jones, Jr., entered a memorandum and recommendation ("M&R") (DE 33), wherein it is recommended that defendants' motion be granted. Plaintiff timely filed objections to the magistrate judge's recommendation and defendants have responded. The issues raised are ripe for ruling. For the reasons given more specifically below, the court adopts the recommendation of the magistrate judge as its own and grants defendants' motion.

**STATEMENT OF THE CASE**

Plaintiff, proceeding pro se, filed this suit on January 16, 2015, alleging his former employer, defendant Waste Management of Wilmington ("WM"), terminated him on the basis of race, African

American, and also in retaliation for opposing racially discriminatory policies. On January 20, 2015,

the clerk issued summonses to plaintiff for service pursuant to Federal Rule of Civil Procedure 4.

Plaintiff served the summonses on each defendant by certified mail. As pertinent here, plaintiff

mailed defendant WM's summons directly to defendant WM at 3920 River Road, Wilmington,

North Carolina, 28401. However, plaintiff addressed the summons and mailing only to "Waste

Management of Wilmington," and did not address it to any individual. (DE 3; DE 6). Defendant

WM received the summons on April 18, 2015, when it was signed for by Retha Ziegler, an hourly,

administrative employee.

On May 20, 2015, plaintiff filed an amended complaint, which then became, and now

remains, the operative pleading in this matter. (Am. Compl., DE 18). Therein, plaintiff asserts

claims for discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title

VII"), 42 U.S.C. § 2000e et seq.; similar claims under the Civil Rights Act of 1866, 42 U.S.C. §§

1981 and 1981a; and a state law claim for wrongful discharge.

Defendants later filed the instant motion to dismiss. Defendants argue that each of plaintiff's

claims against defendant WM should be dismissed for insufficient process and insufficient service

of process, under Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5). Defendants argue first

that plaintiff's method service was improper, where plaintiff failed to address the summons to any

specific individual. Further, defendants contend that, notwithstanding the import of plaintiff's

mailing to "Waste Management of Wilmington," that is not defendant WM's proper corporate name,

which actually is "Waste Management of Carolinas, Inc." In any case, defendants also contend that

plaintiff's complaint should be dismissed as to individual defendants Donovan Dukes ("Dukes"),

Tammie Hoffman ("Hoffman"), and Laura Snow ("Snow") because there is no individual liability

2

under Title VII and because the complaint otherwise fails to plead sufficient facts to support plaintiff's various claims.

In response to defendants' motion, plaintiff submitted a document, which, he contends, demonstrates that defendant WM properly has been served. The document consists of a business card bearing the name and logo of CT Corporation, defendant WM's registered agent for service in this state, as well as a print-out bearing the secretary of state's logo and evidencing that CT Corporation is the registered agent for "Waste Management of Carolinas, Inc." (DE 29-7). Plaintiff did not however file any affidavit of service.

Defendants' motion was referred for M&R on August 11, 2015. M&R entered on February 16, 2016. Therein, it is recommended that defendants' motion be granted. The M&R recommends that plaintiff's claims against defendant WM be dismissed where plaintiff failed to serve properly on defendant WM the summons. In particular, the M&R recommends that the court grant defendants' motion because plaintiff mailed the summons to "Waste Management of Wilmington" generally, not to any officer, director, or managing or general agent, and because plaintiff's purported service on CT Corporation is invalid, where plaintiff failed to prove that someone other than himself delivered the summons. In addition, as to defendants Dukes, Hoffman, and Snow the M&R recommends that plaintiff's Title VII and wrongful discharge claims be dismissed because those claims are not actionable against individual defendants. Finally, the M&R recommends dismissing all of plaintiff's claims against defendants Dukes, Hoffman, and Snow for failure to plead sufficient facts. Plaintiff's timely objections followed on March 1, 2016. Attached to plaintiff's objections to the M&R is the sworn affidavit of Janice Pomeroy Tonga ("Tonga"),

3

wherein Tonga avers that she, not plaintiff, hand delivered a copy of the summons issued by the clerk to defendant WM's registered agent, CT Corporation, on March 24, 2015.  (DE 34, 19).[1]

## STATEMENT OF FACTS

On December 8, 2013, defendant WM hired plaintiff as a "swing driver" in its front loader and roll-off divisions.  (Am. Compl. ¶13).  Among plaintiff's duties as a "swing driver" was covering other drivers' garbage-collection routes on an as-needed basis.

Beginning in January 2014, plaintiff was training with Phil Walker ("Walker"), another Waste Management employee who was to be out for an extended period of time following a foot surgery.  During Walker's absence, plaintiff was to assume Walker's garbage-collection routes.  However, while plaintiff was training with Walker, defendant Dukes repeatedly pulled plaintiff away to perform other tasks.

On July 10, 2014, the date of the events giving rise to plaintiff's termination, plaintiff returned to defendant WM's facility after having completed Walker's route.  Defendant Dukes approached plaintiff and expressed his intent to have with plaintiff a "coaching conversation" regarding missed pick-ups at two local businesses, Sweet and Savory Bake Shop and Image Promotions.  (See id. ¶143).  Plaintiff alleges that defendant Dukes's "coaching conversation" was pretextual, and that defendant Dukes actually was out to "get him" and make plaintiff "look bad." (See id. ¶141).

Acting on that belief, during the "coaching conversation" plaintiff told defendant Dukes that he believed defendant Dukes was "out to get him and make him look bad."  (Id. ¶141).  After the "coaching conversation" became apparently heated, Defendant Dukes stepped away for 15 minutes.

---

[1] Page numbers refer to the numbers generated automatically by the court's electronic filing system, not the numbers affixed to the pages by the parties.

4

He later returned to resume the conversation; however, the results were no better. Plaintiff continued to express his belief that defendant Dukes intended to sabotage his career, and, further, that defendant Dukes's poor managerial skills actually were the cause of the missed pick-ups at Sweet and Savory Bake Shop and Image Promotions. Defendant Dukes later characterized plaintiff's demeanor as intimidating and combative, and further claimed that plaintiff was insubordinate.

During the 15-minute interlude in his meeting with plaintiff, defendant Dukes contacted defendant Snow, defendant WM's regional manager, informing her that plaintiff was "rant[ing]" against him. (Id. ¶141). Later, defendant Snow told plaintiff to take the day off and come back the following Monday, July 14, 2014, to finish discussing the incident. Following defendant Snow's instruction to take the day off, plaintiff pointedly asked defendant Snow if he was being terminated. Defendant Snow did not answer directly, but, instead, repeated that plaintiff should take the remainder of the day off and return on Monday. On July 14, 2014, when plaintiff returned, he was terminated by defendant Snow. Defendant Hoffman, defendant WM's human resources director, later upheld plaintiff's termination.

Prior to plaintiff's termination, he was the subject of at least three disciplinary actions. For example, on April 14, 2014, plaintiff received a suspension.[2] On May 5, 2014, defendant WM disciplined plaintiff for following another vehicle too closely. Although defendant WM later changed its position, finding that plaintiff was not following too closely, defendant WM still placed the "following too closely" disciplinary action in plaintiff's employment file. (Id. ¶256(a)).[3] In

_____

[2] Plaintiff does not allege the cause of his suspension.

[3] The complaint contains two paragraph 256s. "256(a)" refers to the first of those two.

5

addition, on May 7, 2014, plaintiff received a "write up" for failing to wear a hard hat, in violation of defendant WM's hard hat policy. At the time, defendant Dukes asked plaintiff to sign three "write up" slips addressing the violation; however, defendant Dukes later "tore up" the slips. (Id. ¶257). The May 7, 2014, incident was recorded in plaintiff's employment file as a verbal warning. Plaintiff claims that his May 5 and 7, 2014, discipline, as well as defendant Dukes's perceived unwillingness to allow plaintiff to learn properly Walker's route, all were part of an "elaborate scheme" to have plaintiff terminated. (See id. ¶142).

Plaintiff claims that his termination was motivated by race, or otherwise was in retaliation for opposing an unlawful practice. As evidence of race-based animus, plaintiff points to the experience of three white employees, all of whom plaintiff characterizes as similarly situated with himself. In each case, the "similarly situated" employee raised his voice or otherwise used abusive language directed toward defendant Dukes. And, in each case, the white employee was not terminated. As to defendant WM's claimed retaliatory animus, plaintiff alleges that defendant WM, through defendants Dukes and Snow, terminated his employment in retaliation for plaintiff complaining about defendant Dukes's alleged managerial failings to defendant Dukes.

## COURT'S DISCUSSION

A.    Standard of Review

The district court reviews de novo those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for

6

"clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

1.      Rules 12(b)(4) and 12(b)(5)

A motion under Rule 12(b)(4) challenges the sufficiency of process, while a motion under Rule 12(b)(5) challenges the sufficiency of service of process. See Fed. R. Civ. P. 12(b)(4), (b)(5). "When the process gives the defendant actual notice of the pendency of the action, the rules . . . are entitled to a liberal construction" and "every technical violation of the rule or failure of strict compliance may not invalidate the service of process." Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc., 733 F.2d 1087, 1089 (4th Cir. 1984). Nevertheless, "the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored." Id. The plaintiff bears the burden of establishing that process properly has been served. Dickerson v. Napolitano, 604 F.3d 732, 752–53 (2d Cir. 2010); Dalenko v. Stephens, 917 F. Supp. 2d 535, 542 (E.D.N.C. 2013).

2.      Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); see also Edwards v. City of Goldsboro, 178 F.3d 231, 243–44 (4th Cir. 1999). A complaint states a claim under 12(b)(6) if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550

U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

"Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). Where a motion to dismiss challenges only plaintiff's failure to allege sufficient facts, any order dismissing the complaint necessarily is without prejudice, unless the court also concludes that an amendment would be frivolous. See Goode v. Cent. Va. Legal Aid Soc., Inc., 807 F.3d 619, 623–24 (4th Cir. 2015).

B.    Analysis

   1.    Service on Defendant WM

Plaintiff lodges two objections to the magistrate's recommendation that his claims against defendant WM be dismissed. First, plaintiff argues that his attempt to serve defendant WM under the name "Waste Management of Wilmington" is proper where defendant WM previously has used that name when conducting business. Second, plaintiff contends the M&R errs where it concludes that plaintiff served personally defendant WM. In support of this contention, plaintiff submits the Tonga affidavit. The court rejects each objection in turn.

8

a.      Service on "Waste Management of Wilmington"

Federal Rule of Civil Procedure 4 governs service of summonses and the complaint.  "A summons must be served with a copy of the complaint."  Fed. R. Civ. P. 4(c)(1).  "The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m)."  Id.  The summons may be served by "[a]ny person who is at least 18 years old and not a party."  Id. 4(c)(2).

With respect to serving a corporation, the rule provides that a corporation must be served "in the manner prescribed by Rule 4(e)(1) for serving an individual; or . . . by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant."  Id. 4(h)(1).  Rule 4(e)(1) allows service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  Id. 4(e)(1).  Under North Carolina law, a corporation may be served:

a.      By delivering a copy of the summons and of the complaint to an officer, director, or managing agent of the corporation or by leaving copies thereof in the office of such officer, director, or managing agent with the person who is apparently in charge of the office.

b.      By delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to be served or to accept service of process or by serving process upon such agent or the party in a manner specified by any statute.

c.      By mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to the officer, director or agent to be served as specified in paragraphs a and b.

d.      By depositing with a designated delivery service authorized pursuant to 26 U.S.C. § 7502(f)(2) a copy of the summons and complaint, addressed to the

9

officer, director, or agent to be served as specified in paragraphs a. and b., delivering to the addressee, and obtaining a delivery receipt.

N.C. R. Civ. P. 4(j)(6), N.C. Gen. Stat. § 1–1A.

Plaintiff's attempt to serve summons on "Waste Management of Wilmington" does not satisfy the standard for service articulated by either the Federal or North Carolina Rules. First, plaintiff failed to serve the proper defendant. Defendant WM has averred that its corporate identity is not "Waste Management of Wilmington," but, rather, "Waste Management of Carolinas, Inc." (DE 25-1). Although plaintiff has submitted evidence that, he contends, demonstrates defendant WM actually does operate under the name of "Waste Management of Wilmington," it appears that each of those documents was prepared by a third party and thus, is not necessarily indicative of defendant WM's true corporate identity. Moreover, plaintiff also has submitted a document bearing the North Carolina Secretary of State's logo and evidencing CT Corporation as defendant WM's registered agent for service of process, which represents defendant WM's corporate name to be "Waste Management of Carolinas, Inc."

Irrespective of defendant WM's proper identity, plaintiff's attempted service still fails, where he failed to address the summons to any of defendant WM's officers, directors, or managing or general agents. Plaintiff's attempt to serve defendant WM through a generically addressed mailing does not comport with any reasonable interpretation of the rules. See Hoyle v. United Auto Workers Local Union 5285, 444 F. Supp. 2d 467, 475 (W.D.N.C. 2006). Moreover, it is not commensurate with the solemnity and formality of a legal proceeding; nor is it reflective of the seriousness of the allegations levied by plaintiff in his complaint.

    b.  Service Through Defendant WM's Registered Agent, CT Corporation

Plaintiff's attempt to correct his deficient service and properly serve defendant WM through

its registered agent CT Corporation also is defective, regardless of whether such attempt was made

by plaintiff personally, or through Tonga.  Pursuant to Rule 4(b) "[o]n or after filing the complaint,

the plaintiff may present a summons to the clerk for signature and seal."  Fed. R. Civ. P. 4(b).  "If

the summons is properly completed, the clerk must sign, seal, and issue it to the plaintiff for service

on the defendant."  Id.; accord id. 4(a)(f).  Here, the relevant summons issued by the clerk named

only "Waste Management of Wilmington."  (DE 3).  However, the summons served by Tonga on

CT Corporation, on behalf of defendant WM, included defendant WM's proper corporate identity,

"Waste Management of Carolinas, Inc," (DE 30-1), as well as the identity of defendant WM's

registered agent.  Plaintiff's attempt to alter or amend the summons so as to  name as defendant

"Waste Management of Carolinas, Inc." without having the Clerk of Court first review and

subsequently sign and issue a new summons is invalid.  The plain import of Rule 4(b) is that the

Clerk of Court must review the proposed summons before it can be considered valid.  The defect

is particularly egregious on the circumstances now presented, where plaintiff not only added to the

summons a new party but also added to the summons that party's registered agent.

Based on the foregoing, plaintiff's claims against defendant WM must be dismissed without

prejudice.

    2.  Claims against Defendants Dukes, Hoffman, and Snow

      a.  Title VII

Plaintiff objects to the magistrate's recommendation that the court reject his Title VII claims

against defendants Dukes, Hoffman, and Snow.  Plaintiff essentially seeks individual, supervisor

liability. However, such relief is foreclosed by circuit precedent. <u>See</u> <u>Lissau v. S. Food Serv., Inc.</u>, 159 F.3d 177, 180–81 (4th Cir. 1998) (no individual supervisor liability under Title VII). Inasmuch as plaintiff argues that defendants Dukes, Hoffman, and Snow were not his "supervisors," and thus that he may sue them individually, that argument too is without merit. The Fourth Circuit's holding in <u>Lissau</u> forecloses <u>any</u> individual liability under Title VII, except where that individual is plaintiff's "employer." <u>See</u> <u>id.</u>

In any case, plaintiff's claim also would fail because the facts alleged do not state a claim for either disparate treatment or retaliation under Title VII. To state a claim for disparate treatment under Title VII plaintiff must prove that his job performance was satisfactory. <u>See</u> <u>Coleman v. Md. Court of Appeals</u>, 626 F.3d 187, 190 (4th Cir. 2010). Here, plaintiff has failed to plead that his job performance was satisfactory beyond conclusory recitations that he performed his work in a "professional and outstanding manner." (Am. Compl. ¶2). Indeed, plaintiff's allegation that he previously had been suspended—a disciplinary action that plaintiff does not appear to take issue with—tends to belie his assertion that his performance was either "professional" or "outstanding."

Plaintiff's suggestions to the contrary are unavailing. Plaintiff argues that he necessarily met his employer's legitimate expectations, where he completed his route on July 10, 2014. However, plaintiff implicitly concedes that he actually missed garbage pick-ups at Sweet and Savory Bake Shop and Image Promotions. In addition, plaintiff contends that his claim should go forward where he was not given an explanation as to why he was terminated. However, the law does not require that.

To state a claim for retaliation under Title VII, plaintiff must demonstrate that 1) "[]he engaged in a protected activity"; 2) "h[is] employer took an adverse employment action against

12

h[im]"; and 3) that "a causal link between the two events" existed.  Boyer-Liberto v. Fontainebleau

Corp., 786 F.3d 264, 281 (4th Cir. 2015) (en banc).  Although plaintiff is not required to plead facts

that constitute a prima facie case in order to survive a motion to dismiss, see Swierkiewicz v.

Sorema N.A., 534 U.S. 506, 510–15 (2002), plaintiff still must plead sufficient facts to raise his right

to relief above the speculative level.  Coleman, 626 F.3d at 190.

To state a claim for retaliation, plaintiff must plausibly allege that he participated in some

sort of protected activity or opposed a discriminatory practice in the workplace.  See Laughlin v.

Metro. Wash. Airports Auth., 149 F.3d 253, 258–59 (4th Cir. 1998).  Protected participatory activity

is defined by Title VII and includes making a charge of discrimination; as well as testifying,

assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII.

42 U.S.C. § 2000e-3(a); Laughlin, 149 F.3d at 259.  Plaintiff's complaint is devoid of any allegation

that he participated in any protected activity.

"Opposition" is defined as opposing any discriminatory practice in the work place.  Id.

Opposition is defined broadly and "when an employee communicates to her employer a belief that

the employer has engaged in a form of employment discrimination, that communication virtually

always constitutes the employee's opposition to the activity."  DeMasters v. Carilion Clinic, 796

F.3d 409, 417 (4th Cir. 2015) (internal alterations omitted).  Oppositional conduct also includes

"utilizing informal grievance procedures as well as staging informal protests and voicing one's

opinions in order to bring attention to an employer's discriminatory activities."  Id. at 417.  That

definition is broad enough to include "complaining about unlawful practices to a manager."  Id.

(citing Barrett v. Whirlpool Corp., 556 F.3d 502, 516 (6th Cir. 2009)) (internal alterations omitted).

However, the employee must actually complaint of unlawful discrimination, rather than a

generalized workplace grievance.  See Conyers v. Va. Hous. Dev. Auth., 927 F. Supp. 2d 285, 295

(E.D. Va. 2013); see also Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653,

657 (4th Cir. 1998) (holding no retaliation claim where employer was unaware of protected activity).

Plaintiff's claim that Dukes was out to "get him," without more, does not provide sufficient factual

detail from which the court can infer that plaintiff ever complained of unlawful workplace

discrimination.  Moreover, although plaintiff has alleged similarly situated white employees were

treated differently, it is unclear whether plaintiff ever complained about his treatment relative to

those other, white employees.

> b.      § 1981

A claim under § 1981 is identical to a claim under Title VII.  Love-Lane v. Martin, 355 F.3d

766, 786 (4th Cir. 2004).  For the reasons stated above addressing deficiencies in plaintiff's

complaint, plaintiff's § 1981 claim fails under Rule 12(b)(6).

> c.      Wrongful Discharge

Plaintiff objects to the magistrate's conclusion that his wrongful discharge claim be

dismissed as to defendants Dukes, Hoffman, and Snow.  However, "[u]nder North Carolina law a

wrongful discharge claim cannot be brought against an individual."  West v. J.O. Stevenson, Inc.,

__ F. Supp. 3d __, 2016 WL 740431 (E.D.N.C. 2016); accord Garner v. Rentenbach Constructors,

Inc., 350 N.C. 567, 571–72 (1999).

> d.      Gross Negligence

In his objections, plaintiff, for the first time, suggests that his claim against defendants

Dukes, Hoffman, and Snow properly is considered as one for gross negligence under North Carolina

law.  Plaintiff's complaint never explicitly mentions any gross negligence claim.  To the extent

14

plaintiff is attempting to constructively amend the complaint through argument in brief, he cannot. See <u>United States v. Cochran</u>, 79 F. Supp. 3d 578, 583 (E.D.N.C. 2015).

In any event, plaintiff's allegations against these defendants fall short of the standard for gross negligence in North Carolina. Gross negligence is defined as willful or wanton conduct "done with conscious or reckless disregard for the rights and safety of others." <u>F.D.I.C. *ex rel.* Co-op. Bank v. Rippy</u>, 799 F.3d 301, 314 (4th Cir. 2015) (quoting <u>Yancey v. Lea</u>, 354 N.C. 48, 52 (2001)). Here, plaintiff relies only on speculation and has not pleaded sufficient facts from which the court can infer that any of the named defendants acted in conscious or reckless disregard of plaintiff's rights.

In sum, plaintiff's complaint against defendants Dukes, Hoffman, and Snow must be dismissed.

## CONCLUSION

Based on the foregoing, upon <u>de</u> <u>novo</u> review of those portions of the M&R to which specific objections were made, and considered review of the remainder thereof, the court ADOPTS the M&R as its own. Defendants' motion to dismiss the complaint as to defendant WM for insufficient process and insufficient service of process, made pursuant to Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5) is GRANTED. In addition, defendants' motion to dismiss plaintiff's complaint as to defendants Dukes, Hoffman, and Snow made pursuant to Federal Rule of Civil Procedure 12(b)(6) is GRANTED. The clerk of court is DIRECTED to close this case.

SO ORDERED, this the 28th day of March, 2016.

_____
LOUISE W. FLANAGAN
United States District Judge

16